1

JS - 6

2

3

4

5

6

7

8

9       UNITED STATES DISTRICT COURT

10      CENTRAL DISTRICT OF CALIFORNIA

11

12  GUILMER HERNANDEZ, individually,      )   CASE NO. CV 12-02972 MMM (JCGx)
    and on behalf of other members of the )
13  general public similarly situated,    )
                                          )   ORDER GRANTING PLAINTIFF'S
14              Plaintiff,                 )   MOTION TO REMAND
                                          )
15          v.                            )
                                          )
16  TOWNE PARK, LTD., a Maryland          )
    corporation; BOBBY KUHNS, an          )
17  individual; and Does 1 through 10,    )
    inclusive,                            )
18                                        )
                Defendants.               )
19                                        )
                                          )
20                                        )
                                          )
21

22          On February 28, 2012, Guilmer Hernandez filed this putative wage and hour class action

23  in Los Angeles Superior Court against Towne Park, Ltd., Bobby Kuhns, and certain fictitious

24  defendants.[1]  On April 4, 2012, Towne Park removed the action, invoking the court's jurisdiction

25  under the general diversity statute, 28 U.S.C. § 1332(a), and the Class Action Fairness Act of

26

27

28      [1]Notice of Removal ("Removal"), Docket No. 1 (Apr. 4, 2012), Exh. A ("Complaint").

2005 ("CAFA").[2]   Hernandez has now filed a motion to remand.[3]   Towne Park opposes the motion.[4]

Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the court finds this matter appropriate for decision without oral argument.  The hearing calendared for June 25, 2012, is hereby vacated.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Complaint's Allegations

Hernandez is a resident of Los Angeles, California.[5]   Towne Park, Ltd., is a Maryland corporation doing business in California.[6]   Bobby Kuhns was Hernandez's district manager and resides in California.[7]

The complaint alleges that defendants employed Hernandez and others as guest service associate valets, or in similarly titled positions with similar duties.[8]   Hernandez seeks to represent a class of

"[a]ll non-exempt or hourly paid Guest Service Associate Valets, or [employees] in a similar position with similar duties, who worked for Defendants within four

---

[2]*Id.*, ¶ 1.

[3]Motion to Remand for Lack of Subject Matter Jurisdiction ("Motion"), Docket No. 7 (May 4, 2012).  See also Reply to Opposition to Motion to Remand for Lack of Subject Matter Jurisdiction ("Reply"), Docket No. 11 (June 11, 2012).

[4]Opposition to Motion to Remand ("Opp."), Docket No. 10 (June 4, 2012).

[5]Complaint, ¶ 7.

[6]*Id.*, ¶ 8.

[7]*Id.*, ¶ 9.

[8]Complaint, ¶ 23.

1    years prior to the filing of this complaint until the date of certification."[9]

2    Hernandez was employed as a non-exempt, hourly worker from June 2010 to January 14,

3    2012, at defendants' Los Angeles business location.[10]  He alleges on information and belief that

4    employees were not paid for all hours worked because the hours were not recorded or were

5    "erased."  Hernandez also alleges that defendants knew or should have known that class members

6    were entitled to, but did not receive, overtime compensation for their work.[11]  Similarly, he

7    contends that class members were not paid minimum wage for off-the-clock work,[12] that they did

8    not receive the meal and rest periods to which they were entitled,[13] that they were not timely paid

9    all wages on termination, and that they were the victims of various other violations of the

10   California Labor Code.[14]  Hernandez asserts that defendants' failure to comply with California law

11   was "willful[ ], knowing[ ], and intentional[ ]," and that they falsely told class members they had

12   been properly paid to increase defendants' profits.[15]

13   Hernandez pleads the following state law claims on his own behalf and on behalf of

14   members of the class: (1) failure to pay overtime wages in violation of California Labor Code

15   §§ 510 and 1198; (2) failure to pay minimum wage in violation of Labor Code §§ 1194, 1197, and

16   1197.1; (3) failure to timely pay wages on termination in violation of Labor Code §§ 201 and 202;

17   (4) failure to provide compliant wage statements to class members in violation of Labor Code §

18   226(a); and (5)   violation of California's Unfair Competition Law ("UCL"), Business and

19   _____

20   [9]*Id.*, ¶ 17.  Hernandez also seeks certification of a subclass of individuals who worked for
21   defendants within one year prior to the filing of the complaint and until certification, rathis than
     four years.  (*Id.*, ¶ 18.)

22   [10]*Id.*, ¶ 24.
23
24   [11]*Id.*, ¶ 29.
25
26   [12]*Id.*
27   [13]*Id.*, ¶¶ 30-31.
28   [14]*Id.*, ¶¶ 32-35.

     [15]*Id.*, ¶ 35.

Professions Code § 17200 et seq.[16]

He seeks "damages, restitution penalties, injunctive relief, and attorneys' fees in excess of twenty-five thousand dollars[ ], but less than five million dollars[ ], exclusive of interests and costs."[17]   He also reserves the right to seek a larger amount based on "new and different information resulting from investigation and discovery."[18]   The complaint further states that the total amount in controversy for each class member is less than $75,000, and that the aggregate amount in controversy for the entire class is less than $5 million, exclusive of interest and costs. In his prayer for relief, Hernandez seek unpaid wages and "general and special damages as may be appropriate" on the overtime and minimum wage claims,[19] "actual, consequential and incidental losses and damages" on the meal and rest period and wage statement claims,[20] civil penalties on the wage statement claims under the Private Attorneys General Act ("PAGA"), California Labor Code § 2698, et seq.,[21] and prejudgment interest.

**B.     Notice of Removal**

In their notice of removal, defendants invoked the court's jurisdiction under the general diversity statute and CAFA.  As respects the former, the notice asserts that the complete diversity requirement is met because Hernandez he allegedly is a California resident, and Towne Park is a Maryland corporation.[22]   Towne Park contends that Kuhns has been fraudulently joined and that his citizenship should be disregarded for purposes of determining whether the court has diversity

---

[16]*Id.*, ¶¶ 42-85.

[17]*Id.* at 20.

[18]*Id.*

[19]*Id.* at 20-21.

[20]*Id.* at 21.

[21]*Id.* at 22.

[22]Removal, ¶ 6(a).

1   jurisdiction to hear the case.[23]

2        To demonstrate that the amount in controversy requirement is satisfied, Towne Park cites

3   the allegations in the complaint, which it supplements with the declaration of Beverly Valltos, its

4   vice president of administration and compliance.[24]  Valltos states that Hernandez worked for

5   Towne Park from June 17, 2010 to January 14, 2012, and voluntarily left the company on that

6   date.[25]  When he was hired, his hourly wage was $11.55; by the time he left, it had increased to

7   $11.61.[26]  Based on these figures, and the complaint's allegations, Towne Park offers the

8   following estimates of the amount Hernandez has placed in controversy:

| **Plaintiff's Claim** | **Amount in Controversy** |
| --- | --- |
| Unpaid Overtime Wages | $8,639.70 |
| Unpaid Minimum Wages and Penalties | $30,540.00 |
| Penalties for Failure to Pay Wages Upon Termination | $2,240.72 |
| Penalties for Issuing Inaccurate Wage Statements | $2,250.00 |
| Penalties and Unpaid Wages for Missed Meal and Rest Break Periods under PAGA | $24,297.30 |
| Restitution Under the UCL | $16,079.70 |
| Attorneys' Fees | $21,011.86 |
| Amount in Controversy Subtotal | **$105,059.28** |

Towne Park also invokes jurisdiction under CAFA.  The notice of removal asserts that
CAFA's minimal diversity requirement is met, since Hernandez is more likely than not a

---

[23]*Id.*

[24]Removal, Exh. C (Declaration of Beverly Valltos in Support of Notice of Removal of
Civil Action ("Valltos Decl.")), ¶ 1.

[25]*Id.*, ¶ 9.

[26]*Id.*, ¶¶ 11-12.

California citizen and Towne Park is a citizen of Maryland.[27]   Valltos states that during the putative class period, Towne Park employed 2,645 individuals as guest service associate valets, 1,706 of which were terminated or left the company.[28]   The average class member's length of employment was 66 weeks; his or her average hourly wage was "at least $9.25."[29]   Class members were paid once every two weeks.[30]

Valltos reports that, between February 28, 2009 and February 29, 2012, Towne Park employed at least 1,902 putative class members at an average hourly wage of $9.25.[31]   She states that the average daily wage of a putative class member during this period was "at least $74," and that at least 963 class members were terminated or left over the three years.[32]   Finally, Valltos asserts that from February 28, 2011 to February 29, 2012, Towne Park employed at least 1,350 class members, at the average hourly wage of $9.12.[33]   Their average length of employment was 74 weeks.[34]

Based on these estimates and the allegations in Hernandez's complaint, Towne Park offers the following calculations regarding the amount in controversy on the class claims:

| Plaintiff's Claim | Amount in Controversy |
| --- | --- |
| Unpaid Overtime Wages | $9,985,005.48 |
| Unpaid Minimum Wages and Penalties | $29,034.030.00 |

---

[27]Removal, ¶ 8(b).

[28]Valltos Decl., ¶ 13.

[29]*Id.*, ¶ 14.

[30]*Id.*, ¶ 15.

[31]*Id.*, ¶ 16.

[32]*Id.*, ¶ 17.

[33]*Id.*, ¶ 18.

[34]*Id.*

| Penalties for Failure to Pay Wages Upon Termination | $2,137,860.00 |
|---|---|
| Penalties for Issuing Inaccurate Wage Statements | $3,442,500.00 |
| Restitution for Missed Meal and Rest Break Periods | $12,491,385.00 |
| PAGA Penalties | $20,655,000.00 |
| Restitution Under the UCL | $15,386,685,48 |
| Attorneys' Fees | $23,283,116.49 |
| Amount in Controversy Subtotal | **$116,415,582.45** |

## II.  DISCUSSION

### A.    Legal Standard Governing Removal Jurisdiction under CAFA

The parties' primary dispute concerns whether defendants have demonstrated that the court may exercise jurisdiction under CAFA in this case.[35]  The right to remove a case to federal court is entirely a creature of statute.  See, e.g., *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979) ("The removal jurisdiction of the federal courts is derived entirely from the statutory authorization of Congress" (citations omitted)).  The removal statute, 28 U.S.C. § 1441, allows defendants to remove when a case originally filed in state court presents a federal question or is between citizens of different states.  See 28 U.S.C. §§ 1441(a), (b); see also 28 U.S.C. §§ 1446 (setting forth removal procedures generally); 1453 (setting forth removal procedures for class actions).  Only those state court actions that could originally have been filed in federal court may be removed.  28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending . . ."); see

---

[35]As discussed *infra*, Towne Park's opposition does not argue that the amount in controversy on Hernandez's individual claim exceeds $75,000.

1    also, e.g., *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) ("Only state-court actions that

2    originally could have been filed in federal court may be removed to federal court by defendant").

3         In 2005, Congress enacted the Class Action Fairness Act of 2005, Pub. L. No. 109-2, 119

4    Stat. 4.  CAFA gives district courts original jurisdiction to hear class actions "in which the matter

5    in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs," and "in

6    which[, *inter alia*,] any member of a class of plaintiffs is a citizen of a State different from any

7    defendant."  28 U.S.C. § 1332(d)(2); see also *Luthis v. Countrywide Homes Loans Servicing LP*,

8    533 F.3d 1031, 1033-34 (9th Cir. 2008) ("The Class Action Fairness Act of 2005 § 4(a), 28

9    U.S.C. § 1332(d)(2), amended the requirements for diversity jurisdiction by granting district

10   courts original jurisdiction over class actions exceeding $5,000,000 in controversy where at least

11   one plaintiff is diverse from at least one defendant.  In other words, complete diversity is not

12   required.  CAFA also provided for such class actions to be removable to federal court.  See 28

13   U.S.C. § 1453(b).  CAFA was enacted, in part, to 'restore the intent of the framers of the United

14   States Constitution by providing for Federal court consideration of interstate cases of national

15   importance under diversity jurisdiction.'  Pub.L. No. 109-2, § 2(b)(2), 119 Stat. 4, 5 (codified

16   as a note to 28 U.S.C. § 1711)").

17        Under CAFA, the number of members of all proposed plaintiff classes must exceed 100

18   in the aggregate.  28 U.S.C. § 1332(d)(5)(B).  See also *Serrano v. 180 Connect, Inc.*, 478 F.3d

19   1018, 1020-21 (9th Cir. 2007) ("As a threshold matter, CAFA applies to 'class action' lawsuits

20   where the aggregate number of members of all proposed plaintiff classes is 100 or more persons

21   and where the primary defendants are not 'States, State officials, or other governmental entities

22   against whom the district court may be foreclosed from ordering relief.' § 1332(d)(5). . . .  Once

23   the prerequisites of § 1332(d)(5) are satisfied, CAFA vests federal courts with 'original' diversity

24   jurisdiction over class actions if (1) the aggregate amount in controversy exceeds $5,000,000, and

25   (2) any class member is a citizen of a state different from any defendant.  § 1332(d)(2)"); *id.* at

26   1021 n. 3 ("The Fifth Circuit characterized § 1332(d)(5) as an 'exception' to CAFA jurisdiction

27   conferred under § 1332(d)(2). . . .  We view § 1332(d)(5) somewhat differently. . . .  [S]atisfaction

28

of § 1332(d)(5) serves as a prerequisite, rathis than as an exception, to jurisdiction under § 1332(d)(2). This distinction is important because, as we address later, there are 'exceptions' to the statute in which jurisdiction otherwise exists under § 1332(d)(2) but the federal courts eithis *may* or *must* decline to exercise that jurisdiction. See, e.g., § 1332(d)(3)-(4)").

The Ninth Circuit "strictly construe[s] the removal statute[s] against removal jurisdiction." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (citing *Boggs v. Lewis*, 863 F.2d 662, 663 (9th Cir. 1988) and *Takeda v. Northwestern Nat'l Life Ins. Co.*, 765 F.2d 815, 818 (9th Cir. 1985)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Id.* (citing *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1992)). "The 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." *Id.* (citing *Nishimoto v. Federman-Bachrach & Assocs.*, 903 F.2d 709, 712 n. 3 (9th Cir. 1990) and *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988)).

As the Ninth Circuit has explained, CAFA does not disturb the traditional rule that the burden of establishing removal jurisdiction is on the proponent of federal jurisdiction. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 685 (9th Cir. 2006) ("We . . . hold that under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction").

**B.    Whether Towne Park Has Met Its Burden of Demonstrating the Existence of CAFA Jurisdiction**

**1.    Minimal Diversity**

Minimal diversity exists where any member of a class of plaintiffs is a citizen of a state different from any defendant. 28 U.S.C. §§ 1332(d)(2)(A).[36] Hernandez alleges that he is a resident of California.[37] The complaint alleges that Towne Park is a Maryland corporation,[38] and

---

[36]Removal, ¶¶ 39-40.

[37]Complaint, ¶ 7. Citizenship for diversity purposes is the place of one's domicile, not his residence. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001) ("The natural

1    it offers evidence that its principal place of business is located in that state as well.[39]  Hernandez

2    does not dispute this.  Towne Park has thus shown that Hernandez is a citizen of a different state

3    than at least one defendant.  CAFA's minimal diversity requirement is therefore satisfied.

4                    **2.     Numerosity Requirement**

5            Under CAFA, the number of members of all proposed plaintiff classes must exceed 100

6    in the aggregate.  28 U.S.C. § 1332(d)(5)(B).  Towne Park asserts that the putative class includes

7    approximately 2,645 individuals.[40]  Although Hernandez contends that this is an "inflated and

8    speculative" estimate of the size of the class, he misinterprets Valltos's declaration.  Hernandez

9    apparently believes that Valltos asserts the class has 5,000 members.  Valltos breaks down the

10   number of individuals who worked at Towne Park during certain periods of time.[41]  Hernandez

11   may have added the figures she cites together in concluding that she contends there are 5,000

12   members of the class.  Valltos, however, makes no such claim.

13           In any event, Hernandez does not seriously contend that he seeks to represent a class

14   smaller than 100 people, and the court deems Valltos's declaration sufficient evidence that the

15   numerosity requirement is satisfied.

16                    **3.     Amount in Controversy**

17   _____

18   person's state citizenship is . . . determined by her state of domicile, not her state of residence.
     A person's domicile is her permanent home, where she resides with the intention to remain or
19   to which she intends to return. . . .  A person residing in a given state is not necessarily domiciled
     there, and thus is not necessarily a citizen of that State"); *Weible v. United States*, 244 F.2d 158,
20   163 (9th Cir. 1957) ("Residence is physical, whereas domicile is generally a compound of
21   physical presence plus an intention to make a certain definite place one's permanent abode,
     though, to be sure, domicile often hangs on the slender thread of intent alone, as for instance
22   where one is a wanderer over the earth.  Residence is not an immutable condition of domicile").
     Neither party asserts that Hernandez's citizenship is different than his residence, and the court will
23   assume, for purposes of this motion, that Hernandez is a citizen of California.

24
25           [38]Complaint, ¶ 8.

26           [39]Valltos Decl., ¶¶ 4-7.

27           [40]*Id.*, ¶ 13.

28           [41]Motion at 7-8.

1

### a.    Applicable Burden of Proof

2    Although the burden of proving removal jurisdiction rests with defendant, the burden of

3    proof it must satisfy differs depending on the nature of the damages allegations included in the

4    complaint.  "[W]hen the plaintiff fails to plead a specific amount of damages, . . . the defendant

5    seeking removal 'must prove by a preponderance of the evidence that the amount in controversy

6    requirement has been met.'"  *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 998

7    (9th Cir. 2007) (quoting *Abrego Abrego*, 443 F.3d at 683); see also *Guglielmino v. McKee Foods

8    Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) ("In the Jurisdiction and Venue section, it is alleged that

9    '[t]he damages to each Plaintiff are less than $75,000.  In addition, the sum of such damages and

10   the value of injunctive relief sought by plaintiff in this action is less than $75,000.' . . . [B]ecause

11   the allegation in the Jurisdiction and Venue section is not repeated in the Prayer for Relief and

12   does not take account of attorneys' fees, accounting of moneys, or payment of back taxes and

13   benefits, the complaint fails to allege a sufficiently specific total amount in controversy"); *Dupre

14   v. General Motors*, No. CV-10-00955-RGK (Ex), 2010 WL 3447082, *2 (C.D. Cal. Aug. 27,

15   2010) ("As in *Guglielmino*, the complaint is facially unclear as to whether the requisite total

16   amount in controversy has been pled, and GM 'bears the burden of establishing, by a

17   preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional

18   amount]'").

19   "[I]f the complaint alleges damages in excess of the federal amount-in-controversy

20   requirement, [however,] then the amount-in-controversy requirement is presumptively satisfied

21   unless 'it appears to a 'legal certainty' that the claim is actually for less than the jurisdictional

22   minimum.'"  *Lowdermilk*, 479 F.3d at 998 (quoting *Abrego Abrego*, 443 at 683 n. 8).  In the

23   context of CAFA, the converse is also true – when a state court complaint affirmatively alleges

24   that the amount in controversy is less than the jurisdictional threshold, the party seeking removal

25   must prove to a legal certainty that CAFA's jurisdictional amount is met.   *Id.* at 999 (where

26   plaintiff alleges her damages are less than the jurisdictional amount, the "'legal certainty' standard

27   best captures the proof the defendant must produce").

28   The *Lowdermilk* court outlined this variable standard of proof for two reasons.  First, it

1  noted that "federal courts . . . are courts of limited jurisdiction and . . . strictly construe [their]

2  jurisdiction." *Id.* at 998 (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

3  (1994)). Second, it noted the "well established [proposition] that the plaintiff is 'master of her

4  complaint' and can plead to avoid federal jurisdiction." *Id.* at 999. Taking these principles

5  together, the court concluded that "subject to a 'good faith' requirement in pleading, a plaintiff

6  may sue for less than the amount she may be entitled to if she wishes to avoid federal jurisdiction

7  and remain in state court." *Id.* (citing *St. Paul Mercury Indem. Co.*, 303 U.S. at 288-89).

8          To determine which standard of proof applies in this case, the court must ask whether

9  Hernandez's complaint more closely resembles the complaint in *Guglielmino* or the pleading in

10  *Lowdermilk*. In *Guglielmino*, the court reviewed a complaint in which the jurisdiction and venue

11  section alleged that the "sum of such damages and the value of injunctive relief sought . . . is less

12  than \$75,000." *Guglielmino*, 506 F.3d at 700. The prayer for relief, however, sought a number

13  of remedies, including attorneys' fees, that were not damages or injunctive relief; this suggested

14  that the amount in controversy exceeded \$75,000. The court concluded that plaintiffs had not

15  alleged a "sufficiently specific" amount in controversy to trigger the "legal certainty" standard.

16  *Id.* at 701.

17          In *Lowdermilk*, by contrast, the court considered a complaint alleging that:

18          "'THE  AGGREGATE  OF  CLAIMS  DOES  NOT  EXCEED  5  MILLION

19          DOLLARS.' In paragraph 4, under a heading 'JURISDICTION AND VENUE,'

20          it [said] the "[t]he aggregate total of the claims pled herein do [sic] not exceed five

21          million dollars." 479 F.3d at 1003 (Kleinfeld, J., dissenting (alteration original)).

22  The majority concluded that this allegation encompassed *all* potential remedies sought, and thus

23  that the legal certainty standard applied. *Id.* at 998.

24          Hernandez alleges that "the aggregate amount in controversy for the proposed class action,

25  including monetary damages, restitution and attorneys' fees, is less than five million dollars[ ],

26

27

28

12

exclusive of interests and costs."[42]  Because the complaint alleges an amount in controversy below $5,000,000, Towne Park must show "with legal certainty that [the] jurisdictional amount is met." See *id.*

The "legal certainty" standard sets a high bar and ensures that plaintiffs retain their power to limit recovery to avoid federal jurisdiction.  See *id.* ("By adopting 'legal certainty' as the standard of proof, we guard the presumption against federal jurisdiction and preserve the plaintiff's prerogative, subject to the good faith requirement, to forgo a potentially larger recovery to remain in state court").  The court thus examines whether Towne Park's proof satisfies the legal certainty standard.[43]

"In measuring the amount in controversy, a court must assume that the allegations of the

---

[42]Complaint, ¶ 1.  The complaint also alleges that the amount in controversy on each class member's claim is less than $75,000.  (Complaint, ¶ 1.)

[43]The Ninth Circuit's holding in *Guglielmino*, 506 F.3d 696, is not to the contrary.  There, plaintiff alleged "that '[t]he damages to each Plaintiff are less than $75,000.  In addition, the sum of such damages and the value of injunctive relief sought by plaintiff in this action is less than $75,000.'  In its 'Prayer for Relief,' however, the complaint sought, among other things, damages under statutory and common law, punitive and exemplary damages (as to the fraud count), an accounting of other moneys due to plaintiffs, attorneys' fees, payments of back taxes and benefits, a declaration of the respective rights and obligations of the distributors and of McKee, an injunction prohibiting McKee's unfair business practices, and such other relief as the Court deemed proper."  *Id.* at 687.  Because plaintiff alleged only that her "damages" were less than $75,000, but "fail[ed] to allege a sufficiently specific total amount in controversy," the court held that the preponderance of the evidence standard applied.  *Guglielmino* is distinguishable from this case because Hernandez has affirmatively alleged "[t]he amount in controversy for each class representative," and for the class as a whole, not merely the quantum of compensatory damages sought.  Although Hernandez identifies forms of relief in the prayer that are not mentioned in paragraph 1, the term "amount in controversy" is an all encompassing term.

As courts have repeatedly noted, plaintiffs are "masters of their complaints," and "may limit their claims to avoid federal subject matter jurisdiction."  See *Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006) (citing *St. Paul Mercury*, 303 U.S. at 294 ("If [the plaintiff] does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove.")).  Here, Hernandez has affirmatively limited the class's recovery to less than $5 million, and his own recovery to less than $75,000.  The court therefore concludes that the preponderance of the evidence standard does not apply.

complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F.Supp.2d 1199, 1205 (E.D. Cal. 2008) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F.Supp.2d 993, 1001 (C.D. Cal. 2002)). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Id.*(citing *Rippee v. Boston Market Corp.*, 408 F.Supp.2d 982, 986 (S.D. Cal. 2005), and *Scherer v. Equitable Life Assurance Society of the United States*, 347 F.3d 394, 399 (2d Cir. 2003) (emphasis original)).

In its notice of removal, Towne Park alleges that the amount in controversy exceeds $100,000,000. The chart below summarizes its position regarding the class's total potential recovery:

| **Plaintiff's Claim** | **Amount in Controversy** |
| --- | --- |
| Unpaid Overtime Wages | $9,985,005.48 |
| Unpaid Minimum Wages and Penalties | $29,034.030.00 |
| Penalties for Failure to Pay Wages Upon Termination | $2,137,860.00 |
| Penalties for Issuing Inaccurate Wage Statements | $3,442,500.00 |
| Restitution for Missed Meal and Rest Break Periods | $12,491,385.00 |
| PAGA Penalties | $20,655,000.00 |
| Restitution Under the UCL | $15,386,685,48 |
| Attorneys' Fees | $23,283,116.49 |
| Amount in Controversy Subtotal | **$116,415,582.45** |

The court evaluates each listed item in turn.

### b.    Unpaid Overtime Claims

Hernandez alleges that class members "were not paid for all hours worked because all hours worked were not recorded or were erased."[44] He asserts that during the relevant period,

---

[44]Complaint, ¶ 27.

14

class members "worked in excess of eight (8) hours in a day, in excess of twelve (12) hours in a day, and/or in excess of forty (40) hours in a week," and were "not paid for all the [excess] hours they worked."[45]  Hernandez contends that class members were required to clock out at the end of their scheduled shift to avoid accruing overtime pay, even though they continued to work additional hours.[46]  He also alleges that class members "regularly had their hours shorted, and were not paid for all the actual hours they worked," that they "were . . . required to work while clocked out during their meal breaks," and that defendants "eras[ed] hours that [class members] did work."

The notice of removal states that the statute of limitations for the recovery of unpaid overtime wages is three years, and thus that the relevant class period runs from February 28, 2009 to February 28, 2012.  CAL. LAB. CODE § 338(a).  Towne Park assumes, without explanation, that each class member is entitled to "four hours of overtime pay per week in excess of eight per day, forty per week, or eight on the seventh day of work," and one hour per week in excess of twelve hours per day.[47]  Using these assumptions, Towne Park cites Valltos's statement that it employed "at least" 1,902 putative class members, who were paid an average hourly wage of $9.25.[48]  Using these figures, and multiplying the number of putative class members by 71 weeks – the average length of employment of each class member during the class period according to Valltos [49] – Towne Park concludes that members of the class worked a total of 135,042 overtime hours.[50]

Towne Park's calculations require the court to make a number of assumptions that have no evidentiary basis.  First, none of the allegations in the complaint provide any foundation for

---

[45]*Id.*, ¶ 47.

[46]*Id.*, ¶ 48.

[47]Removal, ¶ 8(d)(viii).

[48]Valltos Decl., ¶ 16.

[49]*Id.*, ¶ 17.

[50]Removal, ¶ 8(d)(viii).

concluding that each class member is entitled to the amount of overtime pay Towne Park state in the notice of removal.  It states only that class members worked an unspecified amount of overtime and are entitled to compensation for that time; there are no facts alleged that would support Towne Park's estimate that each class member is entitled to four hours of overtime per week at 1.5 times his or her hourly rate, and one hour per week of double overtime.  Hernandez does not allege in even general or vague terms the frequency of the alleged violations, whether they occurred with respect to each class member every week, or whether they occurred every pay period.  "Defendant['s] calculations call for too much extrapolation and speculation" for the court to determine damages to a legal certainty.  *Ortiz v. Menu Foods, Inc.*, 525 F.Supp.2d 1220, 1224 (D.Haw. 2007).

Second, Valltos's declaration provides little evidentiary support for her statement concerning the average hours worked by class members.  She asserts, without explanation, that the "average" length of class members' employment was 71 weeks between February 28, 2009 and February 28, 2012.  She offers no information concerning how many hours class members worked per week on average, how likely it was that they would have worked overtime during a given period (e.g., whether the amount of business Towne Park handled was consistent over the year, whether there were busier and slower periods, etc.), or how many employees worked full time and how many worked part time during their employment.  Towne Park bears the burden of proffering "summary judgment-type evidence" that supports its claim that the court has jurisdiction to hear this case.  Given Towne Park's access to class members' employment records, it could easily have proffered more than the generalized statements found in Valltos's declaration.  See *Cifuentes v. Red Robin Intern., Inc.*, No. C–11–5635–EMC, 2012 WL 693930, *4 (N.D. Cal. Mar. 1, 2012) ("Defendant has access to evidence as to the amount in controversy but presented none.  It could have estimated damages based on its own data without conceding its own liability.  For instance, instead of extrapolating from Plaintiff's singular allegation to project an average delay for the entire class, Defendant could have taken a sampling of class members to calculate a more informed estimate.  As presented, Defendant's calculation is based on too thin a reed to

satisfy the high bar of the legal certainty standard"). In short, viewed in combination, the assumptions in the removal notice and the general, incomplete information in Valltos's declaration do not satisfy the legal certainty standard. See *Davies*, 2010 WL 2766862 at *5 (observing that courts have applied the legal certainty standard "rigidly").

In its opposition, Towne Park offers a set of somewhat more reasonable assumptions, using a baseline estimate that class members are entitled to compensation for one hour of overtime per week.[51] This estimate is both much lower and more supportable given the lack of detailed factual allegations in the complaint and the dearth of evidence Towne Park has adduced. It has some support in the complaint, given Hernandez's allegation that Towne Park regularly "erased" hours worked by class members and engaged in other practices designed to conceal the true number of hours worked. Nonetheless, the figure remains too high. Valltos's declaration provides no support even for this lower figure. Towne Park contends that its calculation is not "speculative or assumed"; even were the court to accept Valltos's unsupported statement concerning the average number of weeks worked by class members during the relevant period, however, the crucial inquiry is how many *hours* an individual employee worked during a given day or week, not how many weeks he or she worked. Valltos's declaration offers no information on this important point. See *Garcia v. Roadlink USA Pacific, LLC*, No. SACV 11–0445 DOC (AJWx), 2011 WL 2261273, *4 (C.D. Cal. June 7, 2011) ("The declarations upon which Defendants rely lack foundation and rely upon self-serving, inflated numbers that utterly fail to demonstrate that more than five-million dollars is at issue. Defendants cannot assume that every class member is seeking maximum penalties when Plaintiffs did not allege so"). Consequently, the court cannot accept Towne Park's estimate of the overtime wages at issue as proof to a legal certainty that the amount in controversy on that claim exceeds the jurisdictional threshold. Because it is the product of so much unsupported speculation, the court cannot assign a value to this claim for purposes of calculating the amount in controversy.

                **c.**      **Unpaid Minimum Wages and Penalties under Labor Code**

---

[51]Opp. at 10.

## § 1197.1

Hernandez next seeks to recover unpaid minimum wages on his behalf and on behalf of the putative class, as well as penalties under California Labor Code § 1197.1(a) for Towne Park's failure to pay minimum wages for "off the clock" work, i.e., hours employees worked while "clocked out" during meal breaks or after the end of their scheduled shift.[52]  Section 1197.1 provides:

> "Any employer . . .who pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the [labor] commission shall be subject to a civil penalty as follows: (1) For any initial violation that is intentionally committed, one hundred dollars ($100) for each underpaid employee for each pay period for which the employee is underpaid.  (2) For each subsequent violation for the same specific offense, two hundred fifty dollars ($250) for each underpaid employee for each pay period for which the employee is underpaid regardless of whether the initial violation is intentionally committed."

Hernandez notes that Towne Park assumes his § 1197.1 claim is governed by the three-year statute of limitations set forth in California Code of Civil Procedure § 338(a).  See CAL. CODE CIV. PROC. § 338(a) (stating that an "action for liability created by statute, other than a penalty or forfeiture" is governed by a three year statute of limitations).  In reality, however, recovery of such penalties is governed by a one-year statute of limitations.  CAL. CODE CIV. PROC. § 340(a) (providing a one-year statute of limitations for "[a]n action upon a statute for a penalty or forfeiture, if the action is given to an individual, or to an individual and the state, except if the statute imposing it prescribes a different limitation"); see also CAL. LAB. CODE § 1197.1 ("Any employer or other person acting either individually or as an officer, agent, or employee of another person, who pays or causes to be paid to any employee a wage less than the minimum fixed by an order of the commission shall be subject to *a civil penalty*" (emphasis added)).  As Hernandez filed this action on February 28, 2012, class members will be able to recover penalties only for

---

[52]Complaint, ¶ 54.

1   violations that occurred on or after February 28, 2011.

2          While Hernandez is correct that the statute of limitations makes it doubtful that class

3   members can recover § 1197.1 penalties for a period of time longer than a year, the fact that

4   Towne Park may assert a limitations defense does not limit the relief sought in the complaint.

5   See, e.g., *Lara v. Trimac Transp. Services (Western) Inc.*, No. CV 10-4280-GHK (JCx), 2010

6   WL 3119366, *3 (C.D. Cal. Aug. 6, 2010) ("[A]ffirmative defenses, counterclaims, and potential

7   offsets may not be invoked to demonstrate the amount-in-controversy is actually less than the

8   jurisdictional minimum," citing St. *Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 292

9   (1938) ("[T]he fact that the complaint discloses the existence of a valid defense, if asserted, to all

10  or a portion of the claim . . . will not justify remand")).   Consequently, the court can, in

11  calculating the amount in controversy, validly include potential penalties for a four-year period

12  because that is the relief sought in the complaint.

13         Nonetheless, the court cannot rely on Towne Park's speculative calculation of the amount

14  of unpaid minimum wages and attendant penalties.  The notice of removal assumes that "class

15  members are entitled to one additional hour of pay for off-the-clock work performed each day at

16  the minimum wage."[53] Towne Park cites no allegations by Hernandez that support this assumption

17  and offers no explanation of the facts on which it is based.  Valltos's declaration is silent on the

18  point and Towne Park has adduced no other evidence that would permit the court to infer the

19  estimate is reasonable.  Because the estimate has absolutely no factual support, Towne Park has

20  failed to meet its burden of showing to a legal certainty that the amount in controversy exceeds

21  the jurisdictional threshold.   See *Dupre*, 2010 WL 3447082 at *4 (noting that the lower

22  preponderance of the evidence standard was not met because "[d]efendant's calculations are based

23  on many assumptions that leave the [c]ourt to speculate as to the value of too many variables,"

24  and jurisdiction "'cannot [be] base[d] . . . on [d]efendant's speculation and conjecture,'" quoting

25  *Lowdermilk*, 479 F.3d at 1002)).

26         As with the overtime calculation, Towne Park once again revises its estimate in its

27  ───────────────

28       [53]Removal, ¶ 8(d)(ix).

19

opposition; it notes that Hernandez's motion suggests a possible violation rate of one hour of unpaid minimum wages every three pay periods.[54]  Using this assumption, Towne Park asserts that between February 28, 2008 and the date the action commenced, there were 2,645 putative class members, each of whom worked an average of 66 weeks, or 33 pay periods.  It thus calculates that the putative class worked a total of approximately 87,000 pay periods.  Assuming one hour of unpaid minimum wages every three pay periods, it contends that there are approximately 29,000 hours of unpaid minimum wages at issue.  Multiplying that figure by the $8.00 minimum wage rate totals $232,760.00.[55]

While these figures are somewhat more reasonable than the numbers cited in Towne Park's notice of removal, the court cannot simply substitute one set of speculative calculations for another.  Valltos's declaration provides information regarding the number of individuals Towne Park employed during the relevant period, their average length of employment, and the number of pay periods worked on average.  Once again, however, in calculating § 1197.1 penalties, Towne Park simply assumes – with  no evidentiary support – that there was one violation every per three pay periods.[56]  Its reliance on conjecture, as well as its shifting calculations, provide no basis for reasonably estimating the amount in controversy.  See *Ray v. Nordstrom Inc.*, No. 2:11–cv–07277–JHN–CWx, 2011 WL 6148668, *3 (C.D. Cal. Dec. 9, 2011) ("Although the Walsh Declaration does include the average number of hours hourly employees worked per day, Defendant provides no other support for its contention regarding the amount of unpaid wages").

Combining Towne Park's estimate of total unpaid minimum wages due and total § 1197.1 penalties owed, the amount in controversy on these claims is $774,560.00.

### d.   "Waiting Time" Penalties

Hernandez's third cause of action alleges that "[d]uring the relevant time period,

---

[54]Opp. at 11 (citing Motion at 12).

[55]Opp. at 11-12.

[56]Opp., Exh. A (Declaration of Beverly Valltos in Support of Towne Park's Opposition to Plaintiff's Motion to Remand ("Second Valltos Decl.")),  ¶ 5.

1   [d]efendants wilfully failed to pay [class members] who [were] no longer employed . . . their

2   earned wages, including, but not limited to, unpaid overtime wages, unpaid minimum wages,

3   missed meal and rest period premiums, either at the time of discharge, or within [72] hours of

4   their leaving [d]efendants' employ."[57]   Under California Labor Code § 203, when an employee

5   is discharged or resigns, an employer who fails to pay wages owed that individual in a timely

6   fashion is liable for a penalty equal to one day of pay for each day the wages are late, up to a

7   maximum of thirty days.   See CAL. LAB. CODE § 203 ("If an employer willfully fails to pay,

8   without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any

9   wages of an employee who is discharged or who quits, the wages of the employee shall continue

10  as a penalty from the due date thereof at the same rate until paid or until an action therefor is

11  commenced; but the wages shall not continue for more than 30 days").

12         Citing multiple paragraphs in the complaint, Towne Park contends without support that

13  "[p]laintiff [ ]alleges that every member of the putative class suffered at least one instance in

14  which he/she was not paid all wages to which [her/she was] entitled."   A review of the paragraphs

15  cited, however, reveals that they contain no such allegation.   Instead, they allege generally various

16  ways in which Towne Park violated assorted provisions of the Labor Code.[58]   Nonetheless, the

17  court can reasonably draw the inference Towne Park argues, since fairly read, the complaint

18  asserts that each class member suffered some form of Labor Code violation at some point during

19  his or her employment, and was thus entitled to waiting time penalties.   See *Roth v. Comerica*

20  *Bank*, 799 F.Supp.2d 1107, 1125-26 (C.D. Cal. 2010) ("The court agrees that Roth's allegations

21  suggest all class members were denied some form of proper compensation during their

22  employment, and that the underpayment was not corrected at the end of their employment.   Thus,

23  defendants can properly assume that all employees were entitled to maximum waiting time

24  penalties under Labor Code § 203").

25         Even drawing this inference, however, does not suffice to show that Towne Park has met

26  _____

27  [57]Complaint, ¶ 60.

28  [58]*Id.*, ¶¶ 17-18, 21, 47-49, 54-56, 66-69, 74-77, 79, 82, 84.

its their burden.  Towne Park's claim that each employee is "entitled to recover the full 30-day maximum penalty . . ." has no basis either in the allegations in the complaint or the evidence. Towne Park cites paragraphs in the complaint that allege class members' entitlement to "regular daily wages . . . up to a thirty[ ] day maximum . . . ,"[59] and asserts this means that Hernandez has placed the entire thirty day period in controversy with respect to each class member.  This interpretation reads out Hernandez's allegation that class members are entitled to penalties for "*up to*" the thirty day maximum.  This allegation acknowledges that not all class members may be entitled to recover for the maximum penalty period.  Towne Park's response to Hernandez's argument that its notice of removal calculations did not take into account differences between full and part-time employees assumes, without evidentiary support, that half of the putative class members were full time employees, and half were part-time employees who worked 50% of the time full time employees worked.[60]  As with other issues, Towne Park's opposition offers a more "reasonable" set of estimates; the court, however, sees little value in exchanging one set of unsupported, flawed assumptions with another, particularly when Towne Park had the ability to adduce evidence that could have formed the basis for more precise estimate.

As a result, the court declines to include any amount of "waiting time" penalties in determining the total amount in controversy in this action.  See *Lopez v. Source Interlink Companies, Inc.*, No. 2:12–CV–00003–JAM–CKD, 2012 WL 1131543, *4 (E.D. Cal. Mar. 29, 2012) ("The Court agrees that Defendant's calculation is not based on concrete evidence, and thus does not meet the legal certainty standard. . . .  Accordingly, the Court finds that Defendant has not met its burden to show an amount in controversy with legal certainty based upon concrete evidence and therefore cannot include any amount for this claim in the total amount in controversy calculation").

### e.   Missed Meal and Rest Break Claims

Hernandez also pleads that Towne Park deprived the class members of meal and rest

---

[59]*Id.*, ¶ 63.

[60]Opp. at 14-15.

1   breaks.  Although he does not allege causes of action under the Labor Code provisions that govern

2   meal and rest breaks, he pleads a UCL claim that seeks restitution of unpaid wages, including

3   those attributable to the missed breaks.[61]

4        California Labor Code § 226.7 states that "[i]f an employer fails to provide an employee

5   a meal period or rest period . . . , the employer shall pay the employee one additional hour of pay

6   at the employee's regular rate of compensation for each work day that the meal or rest period is

7   not provided."  Labor Code § 512(a) provides that "[a]n employer may not employ an employee

8   for a work period of more than five hours per day without providing the employee with a meal

9   period of not less than 30 minutes, except that if the total work period per day of the employee

10  is no more than six hours, the meal period may be waived by mutual consent of both the employer

11  and employee."  CAL. LAB. CODE § 512(a).[62]  Hernandez alleges that he "and other aggrieved

12  _____

13  [61]As discussed *infra*, Hernandez's class allegations also assert missed meal and rest break

14  claims as part of the PAGA claim.

15  [62]The statute provides that "[a]n employer may not employ an employee for a work period

16  of more than 10 hours per day without providing the employee with a second meal period of not

    less than 30 minutes, except that if the total hours worked is no more than 12 hours, the second

17  meal period may be waived by mutual consent of the employer and the employee only if the first

    meal period was not waived."  CAL. LAB. CODE § 512(a).

18  Federal district courts in California were previously split as to whether § 226.7 authorizes

19  recovery for a meal period and a rest period that were both missed on the same day.  Compare

    *Lyon v. W. W. Grainger, Inc.*, No. C 10-00884 WHA, 2010 WL 1753194, *4 (N.D. Cal. Apr.

20  29, 2010) (holding that defendant's calculation of the amount in controversy on missed meal and

    rest break claims was too high because it assumed "recovery for each violation instead of one

21  recovery per day") with *Marlo v. United Parcel Service, Inc.*, No. CV 03-04336 DDP (RZx),

22  2009 WL 1258491, *7 (C.D. Cal. May 5, 2009) ("Marlo may recover up to two additional hours

    of pay on a single work day for meal period and rest break violations: one if any meal period

23  violations occur in a work day and one if any rest break violations occur in a work day.

24  However, if more than one rest period violation occurs in a single work day but no meal period

    violations occur, Marlo may only recover one additional hour of pay for all of the rest period

25  violations combined; likewise, if more than one meal period violation occurs in a single work day

    but no rest period violations occur on that day, Marlo may only recover one additional hour of pay

26  for all of the meal period violations combined").  This court previously held that § 226.7 did not

27  permit recovery for more than a single hour of pay per day.  See *Roth*, 799 F.Supp.2d at 1120.

    The California Court of Appeal recently held, however, that "it is more reasonable to

28  construe the statute as permitting up to two premium payments per workday – one for failure to

employees did not receive timely, uninterrupted meal periods of at least thirty[ ] minutes," and were "required to work through their meal and rest periods to get work completed even though [d]efendants required them to clock out for meal breaks."[63] He asserts that class members did not "receive a ten[ ] minute rest period for every four[ ] hours worked because they had to work through their rest periods in order to [complete] assigned work . . . within their shift."[64]

Based on these allegations, Towne Park's notice of removal drew the unsupported conclusion that each class member was "denied five meal and rest periods per typical work week."[65] This constitutes the type of mere "speculation or conjecture," *Lowdermilk*, 479 F.3d at 1002, that numerous courts applying the legal certainty standard have rejected. See *Martinez v. Morgan Stanley & Co. Inc.*, No. 09-02937 L (JMA), 2010 WL 3123175, *6 (S.D. Cal. Aug. 9, 2010) (granting plaintiff's motion to remand where "[p]laintiff alleged that she 'frequently missed meal and rest periods' and that '[i]t was the environment at Morgan Stanley for Assistants

---

provide one or more meal periods, and another for failure to provide one or more rest periods." *United Parcel Service, Inc. v. Superior Court*, 196 Cal.App.4th 57, 69 (2011). While a single employee may not recover more than two premium payments for a single workday (even if he or she missed more than two meal or rest breaks), the Court of Appeal concluded that this reading was more consistent with the statute's legislative history and remedial purpose. *Id.* at 69-70. The Ninth Circuit has strongly stated that when applying California law, federal district courts should follow precedential decisions by the California Court of Appeal. See *In re Watts*, 298 F.3d 1077, 1083 (9th Cir. 2002) (suggesting that deference is owed to state appellate courts, and that "the federal courts must follow the decision of the intermediate appellate courts of the state unless there is convincing evidence that the highest court of the state would decide differently"). Hernandez does not cite any California authority suggesting that the holding in *United Parcel Service* is erroneous, that the California Courts of Appeal are split, or that it is likely the California Supreme Court would decide the issue differently. As Towne Park has adduced no evidence of the number of likely meal and rest break violations, much less violations that took place on the same day, the court need not resolve the question here. It notes, however, that the Ninth Circuit's guidance strongly suggests that the court would be bound to follow *United Parcel Service* rather than the contrary rulings of its fellow district courts.

[63]Complaint, ¶ 75.

[64]*Id.*, ¶ 76.

[65]Removal, ¶ 8(d)(xii).

to forego and work through [their] statutory right to rest breaks.' . . . Based on the foregoing, Defendants assume that assistants were not provided three rest or meal breaks per week. This assumption is unsupported by the allegations in the complaint or by evidence"); see also *Maddox v. Continental Cas. Co.*, No. CV 11-00967-RGK (PJWx), 2011 WL 641511, *1 (C.D. Cal. Feb. 10, 2011) (granting a motion to remand due to defendant's failure to prove the amount in controversy by a preponderance of the evidence because it "calculate[d] the amount in controversy by making significant assumptions. As to the first claim, Defendant assume[d] at least two missed meal periods and/or rest breaks per week. As to the second claim, Defendant assume[d] at least 10 hours of overtime per week. Based on these assumptions, Defendant . . . arrived at an amount in controversy equal to $75,260. [¶] Equally valid assumptions could be made that result in damages that are less than $75,000. Without any evidence supporting Defendant's assumptions, the Court finds Defendant's calculations unpersuasive. [¶] In short, Defendants ask the Court to speculate as to the number of overtime hours worked and the number of missed meal periods and rest breaks taken"); *Campbell v. Vitran Express, Inc.* No. CV-10-04442 RGK (SHx), 2010 WL 4971944, *3 (C.D. Cal. Aug. 16, 2010) (granting a motion to remand where plaintiffs alleged that "[d]efendant 'failed to provide the Plaintiffs . . . the required rest and meal periods during the relevant time period," and "[d]efendant improperly extrapolated these limited allegations, infusing each with extensive assumptions. . . [e.g., by] assum[ing], without any evidence, that [plaintiff] missed one meal period and one rest period five times per week," because "under the legal certainty standard, this type of calculation devoid of any concrete evidence 'is insufficient'" (citation omitted)).

In its opposition, Towne Park advances a more defensible position. It notes that Hernandez makes the "reasonable assumption" that it committed one break violation per class member every two weeks.[66] Although such an assumption is somewhat more plausible than the one on which the notice of removal was based, it is no less unsupported. The legal certainty standard requires that

---

[66]Motion at 17 n. 7. Hernandez makes this assumption only in relation to discussing his individual amount in controversy, but Towne Park extrapolates this assumption across the entire class.

1   Towne Park adduce concrete evidence supporting federal jurisdiction, not mere supposition.  See

2   *Smith v. Brinker Int'l, Inc.*, No. C 10-0213 VRW, 2010 WL 1838726, *3 (N.D. Cal. May 5,

3   2010) ("Defendants' assumption that each plaintiff worked 2.5 hours overtime each day is not

4   supported by the allegations in the operative complaint. . . .  The complaint does not quantify the

5   number of overtime hours that are allegedly subject to compensation, nor the number of meal and

6   rest periods that defendants allegedly failed to provide.  Defendants provide no sufficient basis to

7   apply [an] assumption of 2.5 overtime hours each day [for purposes of] calculating the amount in

8   controversy.  The court may not base its jurisdiction on speculation and conjecture[,]" citing

9   *Lowdermilk*, 479 F.3d at 1002).  Because it has not done so with respect to Hernandez's meal and

10  rest period violation claim, the court declines to include the value of meal and rest period

11  violations in its calculation of the amount in controversy in this case.

12          **f.      Penalties under Labor Code § 226 for Failure to Issue Accurate**

13                  **Wage Statements**

14          Hernandez's fourth cause of action asserts that Towne Park issued noncompliant wage

15  statements.  California Labor Code § 226(a) provides that "[e]very employer shall, semimonthly

16  or at the time of each payment of wages, furnish each of his or her employees . . . an accurate

17  itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the

18  employee . . . and (9) all applicable hourly rates in effect during the pay period and the

19  corresponding number of hours worked at each hourly rate by the employee. "  Section 226(e)

20  states that "[a]n employee suffering injury as a result of a knowing and intentional failure by an

21  employer to comply with subdivision (a) is entitled to recover the greater of all actual damages

22  or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars

23  ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate

24  penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable

25  attorney's fees. "  The statute of limitations on a claim for § 226(a) penalties is one year; the

26  statute of limitations for actual damages under § 226(a), as authorized by § 226(e), is three years.

27  See *Singer v. Becton, Dickinson, & Co.*, No. 08cv821 IEG (BLM), 2008 WL 2899825, *4-5

28  (S.D. Cal. July 25, 2008).

The complaint alleges that Towne Park "intentionally and willfully failed to provide employees with complete and accurate wage statements" by failing to account for hours worked off the clock at the end of shifts, and during meal and rest breaks.[67] Based on this assertion, Towne Park infers that each employee is entitled to claim a penalty for each pay period he or she worked.[68] This assumption has no basis, either in the complaint's plain language or in any summary-judgment type evidence. See *Fletcher v. Toro Co.,* No. 08–cv–2275 DMS (WMC), 2009 WL 8405058, *9 (S.D. Cal. Feb. 3, 2009) ("Defendant argues that both the wage statement and waiting time penalty estimates are based solely on Plaintiff's allegations. Defendant arrived at its figures by taking as true the allegations in the Complaint and multiplying accordingly. However, as above, Defendant does not carry its burden by merely assuming maximum damages without providing supporting evidence"); see also *Roth*, 799 F.Supp.2d at 1130 ("Here, defendants are in the best position to adduce evidence regarding the working hours and wages of their tellers. In support of their notice of removal, defendants could have proffered evidence regarding CMC's actual policies or practices. They could have conducted a sampling or other analysis demonstrating that it was more likely than not that many of their employees regularly worked more than eight hours in a day or forty hours in a week to support calculations regarding potential overtime claims"). Once again, defendants rely on speculation in order to meet their evidentiary burden.

### g.    PAGA Penalties

Hernandez next seeks to recover penalties under The Private Attorneys General Act of 2004 ("PAGA"), California Labor Code § 2699.  That statute states:

> "Notwithstanding any other provision of law, any provision of this code that provides for a civil penalty to be assessed and collected by the Labor and Workforce Development Agency . . . may, as an alternative, be recovered through a civil action brought by an aggrieved employee on behalf of himself or herself and

---

[67]Complaint, ¶ 66.

[68]Removal, ¶ 8(d)(xi); see also Opp. at 16.

other current or former employees pursuant to the procedures specified in Section 2699.3." *Id.*, § 2699(a).

PAGA further provides that "[f]or all provisions of this code except those for which a civil penalty is specifically provided," the aggrieved employee may seek civil penalties of "one hundred dollars ($100) for each aggrieved employee per pay period for the initial violation and two hundred dollars ($200) for each aggrieved employee per pay period for each subsequent violation" against an employer who employs more than one employee. *Id.*, § 2699(f).

Hernandez's fifth cause of action asserts that Towne Park violated "numerous sections of the California Labor Code"; he cites all the Labor Code provisions discussed in prior sections of this order. These include failure to pay overtime, failure to pay minimum wages, failure to provide meal and rest periods, failure timely to pay wages on termination, failure to pay all wages earned during the period of employment, and failure to provide accurate wage statements.[69] The parties' arguments regarding these claims raise a number of difficult factual and legal issues regarding the PAGA claim; both sides advance arguments that are either unsupportable or incorrect. The court addresses each in turn.

### i.     Towne Park's Flawed Calculations

Towne Park proffers a series of confusing calculations in an effort to meet its burden regarding the amount in controversy on the PAGA claim.[70] It notes that the statute of limitations on PAGA penalties is one year, and uses February 28, 2011 to February 29, 2012 as the period for which penalties would be due. Towne Park relies on Valltos's declaration, which states that during that one year period, it issued 16,256 paychecks to putative class members (representing an equivalent number of pay periods),[71] and that 1,350 class members worked for the company

---

[69]Complaint, ¶ 74(a)-(g).

[70]Opp. at 21. Towne Park's notice of removal, for whatever reason, discusses only penalties recoverable for meal and rest period violations in calculating PAGA penalties. Towne Park's opposition addresses a broader range of violations. Those are the assumptions the court addresses here.

[71]Second Valltos Decl., ¶ 5.

during that period.[72]  Towne Park assumes that a violation took place for each class member each pay period.  Using a low end penalty of $100 per violation, it calculates $1.625 million in penalties recoverable for the violation of a single Labor Code provision.[73]

Towne Park then cites *eight* Labor Code provisions that Hernandez alleges were violated, and multiplies $1.625 million by eight.  In this fashion, it calculates a total PAGA recovery of $12,937,300.[74]

Towne Park's calculation is problematic for numerous reasons.  First, it assumes that the total PAGA recovery should be considered in determining the amount in controversy, despite the fact that the statute provides that 75% of the recovery must go to the Labor and Workforce Development Agency ("LWDA"), leaving only 25% for "aggrieved employees."  See CAL. LAB. CODE § 2699(I) ("[C]ivil penalties recovered by aggrieved employees shall be distributed as follows: 75 percent to the Labor and Workforce Development Agency for enforcement of labor laws and education of employers and employees about their rights and responsibilities under this code, to be continuously appropriated to supplement and not supplant the funding to the agency for those purposes; and 25 percent to the aggrieved employees").  See *Smith v. Brinker Int'l, Inc.*, No. C 10-0213 VRW, 2010 WL 1838726, *2, 5 (N.D. Cal. May 5, 2010) (including only 25% of the total possible recovery under PAGA for purposes of calculating the amount in controversy); *Pulera v. F & B, Inc.*, No. 2:08-cv-00275 MCE DAD, 2008 WL 3863489, *4 (E.D. Cal. Aug. 19, 2008) ("The amounts recoverable by Plaintiff based on her PAGA claims are separate and distinct from the amounts recoverable by the State of California via the LWDA, and therefore these amounts may not be aggregated"); but see *Urbino v. Orkin Services*, CV 11-06456 CJC (PJWx), Docket No. 33 (Oct. 5, 2011) ("This Court agrees with the *Thomas* court and finds that the amount in controversy in a PAGA claim is predicated on the total amount of civil penalties sought by the aggrieved employees"); *Thomas v. Aetna Health of California, Inc.*, No.

[72]Valltos Decl., ¶ 18.

[73]Opp. at 21.

[74]*Id.*

29

1   1:10–cv–01906–AWI–SKO, 2011 WL 2173715 (E.D. Cal. June 2, 2011) ("[T]he amount at stake

2   in a PAGA claim is predicated on the total amount of the penalties that can be sought by the

3   aggrieved employees as the proxy of the LWDA"); *Schiller v. David's Bridal, Inc.*, No.

4   1:10-cv-00616 AWI SKO, 2010 WL 2793650, *8 (E.D. Cal. July 14, 2010) (holding that plaintiff

5   seeking PAGA penalties places 100% of the penalty amount in controversy").

6        While the court acknowledges the split in authority, on balance it finds the reasoning of the

7   *Smith* and *Pulera* courts more persuasive.  The courts' disagreement concerns the "common and

8   undivided interest" exception to the general rule that "aggregated claims of multiple claimants

9   cannot form the basis of the amount in controversy."  *Pulera*, 2008 WL 3863489 at *3.  The

10  *Thomas* and *Urbino* courts relied heavily on their perception that PAGA was designed to vindicate

11  a collective, rather than an individual right.  The *Thomas* court compared PAGA to a shareholder

12  derivative action, where "the corporation sustains the primary injury. . . .  As a result, the

13  shareholders step into the shoes of the corporation and assert its interests – they have no *individual*

14  right to recovery."  *Thomas*, 2011 WL 2173715 at *17.  The *Urbino* court agreed with this

15  analysis, stating that "a PAGA action is essentially a law enforcement action designed to benefit

16  the public, not to compensate aggrieved employees."  *Id.* at 14.

17       The analogy those courts draw is apt, but it does not tell the whole story.  As the *Pulera*

18  court noted, the aggregation of employees' individual rights does not compel their aggregation

19  with the rights of a state agency, the LWDA.  Citing *Troy Bank of Troy, Ind., v. G.A. Whitehead*

20  *& Co.*, 222 U.S. 39, 40 (1911), the *Pulera* court observed that the "common and undivided

21  interest" exception relies on the notion that "neither [party] can enforce [the claim] in the absence

22  of the other."  *Pulera*, 2008 WL 3863489 at *3.  Under PAGA, "[h]owever, the LWDA can

23  choose to enforce those claims itself, regardless of the employee's involvement," just as

24  employees can, if LWDA approves, sue without any direct involvement by the agency.  The

25  statute thus permits either the LWDA or the aggrieved employees to act independently to enforce

26  the Labor Code.  *Id*.  This cuts against aggregating the agency's claims with the employees'

27  claims, even if the employees' individual claims should be aggregated under the "common and

28

30

undivided interest" exception.  Consequently, the court concludes that only 25% of the potential recovery on the representative action can be included in calculating the amount in controversy on the PAGA claim.

Second, as with many of its other calculations, Towne Park impermissibly assumes the existence of a maximum number of violations, but cites no allegations in the complaint nor any evidence that provides a factual basis for doing so.  As discussed, the court cannot credit Towne Park's assumptions regarding overtime payments and waiting time penalties, and thus declines to consider these statutory violations in assessing the amount in controversy on the PAGA claim. Additionally, as respects the minimum wage claim, the court noted that assuming the existence of one violation every three pay periods resulted in a reasonable calculation of the amount in controversy on that claim; the same assumption should apply in calculating Hernandez's potential PAGA recovery.  Towne Park appears to have *triple-counted* the PAGA recovery on the meal and rest period claims, assuming a violation of § 512(a), "[§] 226.7 relating to meal periods" and "[§] 226.7 relating to rest periods" every single pay period.[75]  Putting aside the fact that § 226.7 and § 512(a) are intended to work in tandem – not provide separate bases for a violation – the court has already explained that Towne Park's assumptions regarding the number of meal and rest period violations are unsupported.

Contrary to Towne Park's assertion that the court "need not make any assumptions about the number of violations occurring per week," its calculation piles assumption on assumption, none of which is supported by "summary judgment-type evidence."  Towne Park had the ability to produce much of the missing information, since it has access to its employees' time records, yet did not do so.  As a result, almost all of its estimate of the penalties potentially recoverable under § 2699 cannot be included in calculating the amount in controversy.

### ii.    Hernandez's Flawed Legal Propositions

For his part, Hernandez advances two legal propositions that are incorrect.  First, he contends that § 2699(f) "specifically carves out provisions of the Code for which a 'civil penalty

---

[75]Opp. at 21.

is specifically provided' from being eligible for PAGA penalties."[76]   As a result, he suggests, Towne Park is "double counting" the possible recovery for certain types of violations. The plain language of the statute does not support this contention.  Section 2699(f) states only that "*[f]or all provisions of this code except those for which a civil penalty is specifically provided*, there is established a civil penalty for a violation of these provisions."  Subsection (f) then details the specific dollar amount of the penalties to be imposed.  Hernandez interprets the emphasized phrase as excepting all statutory provisions for which the code already provides a civil penalty from the scope of a PAGA action; the better reading, however, is that § 2699(f) establishes the amount of the civil penalty for violation of provisions that do not themselves set a penalty amount.

Moreover, the authority Hernandez cites does not support his view.  PAGA provides a right of action for private plaintiffs to recover "civil penalt[ies] to be assessed and collected by the [LWDA]."  CAL. LAB. CODE § 2699(a).  In *Dunlap v. Superior Court*, 142 Cal.App.4th 330 (2006), the court noted:

> "[N]ot all statutory penalties are 'civil penalties' subject to the PAG Act.  One must 'distinguish between a request for statutory penalties provided by the Labor Code for employer wage-and-hour violations, which were recoverable directly by employees well before the [PAG] Act became part of the Labor Code, and a demand for 'civil penalties,' previously enforceable only by the State's labor law enforcement agencies.'"  *Id.* at 339 (quoting *Caliber Bodyworks, Inc. v. Superior Court*,  134 Cal.App.4th 365, 377 (2005)).

As these courts noted, § 2699(g)(1) explicitly states that "[n]othing in this part shall operate to limit an employee's right to pursue or recover other remedies available under state or federal law, either separately or concurrently with an action taken under this part."  CAL. LAB. CODE § 2699(g)(1).  Accordingly, PAGA is not designed to limit or proscribe remedies available to a plaintiff under preexisting law.  Before PAGA was enacted, many Labor Code provisions imposed statutory penalties recoverable by employees.  These penalties are distinguishable from the *civil*

---

[76]Motion at 17.

penalties that a representative plaintiff can now seek under PAGA.  See *Caliber Bodyworks, Inc.*, 145 Cal.App.4th at 377 ("[I]n both its demurrer and its petition for writ of mandate, Caliber fails to distinguish between a request for statutory penalties provided by the Labor Code for employer wage-and-hour violations, which were recoverable directly by employees well before the Act became part of the Labor Code, and a demand for 'civil penalties,' previously enforceable only by the State's labor law enforcement agencies."); see also *Villacres v. ABM Industries Inc.*, 189 Cal.App.4th 562, 579 (2010) (noting that "[s]ome Labor Code provisions establish penalties that are not expressly denominated 'civil penalties' and are therefore not subject to the PAGA.  If a penalty under the Labor Code is not a 'civil penalty,' it is commonly called a 'statutory penalty,'" and that Labor Code § 203 imposes a statutory penalty for waiting time violations).  Consequently, there is nothing anomalous or improper about a plaintiff recovering statutory penalties under certain provisions, and civil penalties under PAGA for violations of the same statutes.  The fact that Hernandez himself has pled both types of claims undermines several of his "double counting" arguments.[77]

### iii.   Labor Code § 204

Hernandez's PAGA claim, *inter alia*, seeks civil penalties for the violation of a Labor Code provision not otherwise addressed in the complaint.  Specifically, he alleges that Towne Park violated § 204, which states:

---

[77]Opp. at 20.  Towne Park, moreover, cites *Schiller* for the proposition that PAGA penalties can be "stacked," i.e., multiple PAGA penalties can be assessed for the same pay period for different Labor Code violations.  See *Schiller*, 2010 WL 2793650 at *6 ("Plaintiff cites no authority establishing that PAGA penalties could not be awarded for every cause of action under which they are alleged.  Therefore, it is conceivable that Plaintiff could recover PAGA penalties for each separate type of Labor Code violation"); see also *Smith*, 2010 WL 1838726 at *2-6 (stacking PAGA penalties in determining the amount in controversy in an individual action).  Towne Park advances this proposition in apparent response to an argument Hernandez did not make.  Although he contends that PAGA penalties cannot be imposed when other sections of the Labor Code provide for penalties (Motion at 17-18), and also that PAGA penalties due aggrieved employees cannot be aggregated with the LWDA's recovery (Reply at 13), Hernandez does not argue that PAGA penalties cannot be stacked.  For this reason, and because federal courts applying California law have concluded that stacking is appropriate, the court assumes that Hernandez seeks to recover PAGA penalties for multiple Labor Code violations per pay period.

1      "All wages, other than those mentioned in Section 201, 201.3, 202, 204.1, or

2      204.2, earned by any person in any employment are due and payable twice during

3      each calendar month, on days designated in advance by the employer as the regular

4      paydays.  Labor performed between the 1st and 15th days, inclusive, of any

5      calendar month shall be paid for between the 16th and the 26th day of the month

6      during which the labor was performed, and labor performed between the 16th and

7      the last day, inclusive, of any calendar month, shall be paid for between the 1st and

8      10th day of the following month."  CAL. LAB. CODE § 204(a).

9   The statute states that "[n]otwithstanding any other provision of this section, all wages earned for

10  labor in excess of the normal work period shall be paid no later than the payday for the next

11  regular payroll period."  *Id.* § 204(b)(1).

12       Hernandez alleges that Towne Park violated this provision by failing to pay aggrieved

13  employees "all wages due to them . . . including, but not limited to, unpaid overtime wages,

14  unpaid minimum wages, and missed meal and rest period premiums."[78]  The claim thus relies on

15  the existence of other Labor Code violations.  Because Towne Park has failed to adduce sufficient

16  evidence regarding the estimated number of any type of alleged violation, it follows that it has

17  failed to demonstrate the existence of § 204 violations or the amount in controversy that could

18  reasonably be estimated to be at issue on the claim.  Even if it were to apply the legal certainty

19  standard generously, the court would at most be able to infer that an unspecified number of

20  violations occurred during the course of the relevant class period.  Here, the most conservative

21  estimate of any kind that Towne Park has advanced is that a minimum wage violation took place

22  once every three pay periods.  While the court did not credit that assumption in calculating

23  § 1197.1 penalties because it had no evidentiary base, it might be possible to infer that *some* of

24  the numerous Labor Code violations alleged in the complaint took place once every three pay

25  periods.  Once again, however, Towne Park has adduced no competent evidence suggesting that

26  the assumption has any basis in fact.  If such an inference could be drawn, it would support a

27  _____

28  [78]Complaint, ¶ 77.

34

finding that Towne Park violated § 204 with equal frequency by failing to pay wages due within the time frame mandated by the statute.  Although not compelled to do so, the court will include penalties for § 204 violations once every three pay periods for each class member.

Valltos states that from February 29, 2008, to February 29, 2012, Towne Park employed 2,645 individuals who each worked an average of 66 weeks.[79]  The average employee therefore worked 33 pay periods.  Assuming one violation every three pay periods, the average class member experienced 11 violations.  California Labor Code § 210 sets out the penalties for violating § 204, stating: "(1) For any initial violation, one hundred dollars ($100) for each failure to pay each employee.  (2) For each subsequent violation, or any willful or intentional violation, two hundred dollars ($200) for each failure to pay each employee, plus 25 percent of the amount unlawfully withheld."  CAL. LAB. CODE § 210(a).  Accordingly, each of Towne Park's 2,645 employees were subject to an initial violation, penalties for which total $260,450.  The subsequent violations require imposition of a $200 penalty.  Because the court assumes there were ten additional violations per employee, this results in an per-employee penalty figure of $2,000.  When that figure is multiplied by 2,645 class members, the PAGA penalty amount is $5,290,000,  The total penalty assessment is therefore $5,550,450.[80]

### iv.  Total PAGA Penalties in Controversy

Based on the foregoing, the court concludes that Towne Park has adduced sufficient evidence that the following penalties are at issue:

| **Plaintiff's Claim** | **Amount in Controversy** |
| --- | --- |
| Penalties for Not Paying Wages Due By Certain Dates | $5,550,450 |
| **PAGA Penalty Subtotal** | **$5,550,450** |

[79]Valltos Decl., ¶¶ 13-14.

[80]Both parties offer incorrect calculations of the amount of penalties due.  Because the court declines to address Towne Park's statute of limitations defense in making the calculation, it uses the four-year period alleged in the complaint to calculate the amount in controversy.  Additionally, the parties appear to assume, without basis, that a $100 penalty applies per pay period.  This is an incorrect interpretation of the Labor Code.

Dividing the total by four yields the aggregate amount in controversy on the aggrieved employees'
claim.  Consequently, affording Towne Park the benefit of the doubt on the multiple gaps in its
evidence, it has demonstrated that the amount in controversy on Hernandez's PAGA claim is
$1,387,613.

### h.  Restitution Under the UCL

Towne Park's notice of removal argued that because Hernandez alleged that each Labor
Code violation constituted an "unlawful" business practice under the UCL, the amount in
controversy on the UCL claim was the amount of restitution he could recover for each statutory
violation.[81]  Hernandez correctly notes, however, that as the only remedy recoverable under the
UCL is restitution of wages due, Towne Park is double-counting much of the recovery he and the
class could conceivably receive.[82]  Towne Park appears to concede this point, as it does not
suggest in its opposition that a duplicative recovery is available under the UCL; instead, it applies
the UCL's four-year limitations period in calculating the amount in controversy on Hernandez's
Labor Code claims.  Because the court has already taken into account so many of those
calculations as are adequately supported, it does not additional sums for any recovery under the
UCL.

### i.  Attorneys' Fees

Finally, Hernandez seeks to recover attorneys' fees under California Labor Code
§1194(a).[83]  Attorneys' fees are properly included in calculating the amount in controversy for
purposes of diversity jurisdiction.  See *Galt v. Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998)
("We hold that where an underlying statute authorizes an award of attorneys' fees, either with

---

[81]Removal, ¶ 8(d).

[82]Motion at 19.

[83]See CAL. LAB. CODE § 1194(a) ("Notwithstanding any agreement to work for a lesser
wage, any employee receiving less than the legal minimum wage or the legal overtime
compensation applicable to the employee is entitled to recover in a civil action the unpaid balance
of the full amount of this minimum wage or overtime compensation, including interest thereon,
*reasonable attorney's fees, and costs of suit*" (emphasis added)).

1  mandatory or discretionary language, such fees may be included in the amount in controversy").

2  See also *Lowdermilk*, 479 F.3d at 1000.  Towne Park contends that "[a]ssuming a conservative

3  attorneys' fee award of only 25% of the . . . amounts in controversy" on Hernandez's individual

4  claims, recoverable fees would be $6,180,504.00.[84]

5      As discussed, some of Towne Park's damages calculations are based on unfounded

6  assumptions; this in turn inflates its estimate of fees.  More fundamentally, courts are split as to

7  whether only attorneys' fees that have accrued at the time of removal should be considered in

8  calculating the amount in controversy, or whether the calculation should take into account fees

9  likely to accrue over the life of the case.  Compare *Brady v. Mercedes-Benz USA, Inc.*, 243

10  F.Supp.2d 1004, 1011 n. 4 (N.D. Cal. 2002) ("While an estimate of the amount in controversy

11  must be made based on facts known at the time of removal, that does not imply that items such

12  as future income loss, damages, or attorneys fees likely to be incurred cannot be estimated at the

13  time of removal"); *Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1034-35 (N.D. Cal. 2002)

14  ("Such fees necessarily accrue until the action is resolved.  Thus, the Ninth Circuit must have

15  anticipated that district courts would project fees beyond removal") with *Dukes v. Twin City Fire*

16  *Ins. Co.*, No. CV-09-2197-PHX-NVW, 2010 WL 94109, *2 (D. Ariz. Jan. 6, 2010) ("This Court

17  concludes that the better view is that attorneys' fees incurred after the date of removal are not

18  properly included because the amount in controversy is to be determined as of the date of removal.

19  Future attorneys' fees are entirely speculative, may be avoided, and are therefore not 'in

20  controversy' at the time of removal"); *Faulkner v. Astro-Med, Inc.*, No. C 99-2562 SI, 1999 WL

21  820198, *4 (N.D. Cal. Oct. 4, 1999) ("When estimating attorney's fees for the purposes of

22  establishing jurisdiction, the only fees that can be considered are those incurred as of the date of

23  removal," citing *Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993)); *Conrad Associates v. Hartford*

24  *Accident & Indemnity Co.*, 994 F.Supp. 1196, 1200 (N.D. Cal. 1998) (declining to consider post-

25  removal events in calculating attorneys' fees for purposes of assessing removal); *Green v. Party*

26  *City Corp.*, No. CV-01-09681 CAS (Ex), 2002 WL 553219, *2 & n. 3 (C.D. Cal. Apr. 9, 2002)

27

28  [84]Opp. at 24.

1    (calculating attorneys' fees on the basis "only [of] work done by plaintiff's counsel prior to

2    removal").  See also *Giordano v. Park Avenue Life Insurance Co.*, No. CV 09-01405 SJO

3    (FMOx), 2009 WL 1474945, *3 (C.D. Cal. Apr. 7, 2009) ("Where attorneys' fees are to be

4    included in the amount in controversy, 'district courts in this circuit have disagreed [as to] whether

5    attorneys' fees incurred after the date of removal are properly included in the amount in

6    controversy:' some courts refuse to consider attorneys' fees incurred after removal whereas others

7    include a 'reasonable estimate of attorneys['] fees likely to be expended,'" quoting *Burk v.*

8    *Medical Savings Insurance Co.*, 348 F. Supp.2d 1063, 1068-69 (D. Ariz. 2004) (alterations

9    original)).

10         Towne Park assumes that fees should be calculated through trial or other resolution of the

11   action.  It asserts that its estimate is conservative; given the speculative nature of many of its

12   calculations concerning other aspects of the amount in controversy, however, its fee calculation

13   cannot be credited.  As another court in this jurisdiction has noted, "[d]efendant['s] estimate of

14   [p]laintiff['s] fees for activities anticipated but not yet performed, even if accurate, may be

15   irrelevant.  Further, even assuming that the correct approach is to include a reasonable estimate

16   of fees likely to be recovered, [d]efendant['s] calculations are speculative, lack evidentiary

17   support, and are conclusory at best."  *Wastier v. Schwan's Consumer Brands*, No. 07CV1594,

18   2007 WL 4277552, *3 (S.D. Cal. Dec. 5, 2007).  Given the Ninth Circuit's direction that the

19   removing party produce "summary-judgment-type evidence" showing that the amount in

20   controversy requirement is met, *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004),

21   the court concludes that defendants have not adduced adequate proof of the amount of attorneys'

22   fees that should be used to calculate the amount in controversy.  Therefore, the court declines to

23   consider Hernandez's prayer for attorneys' fees in determining the amount in controversy.

24         **m.    Conclusion Regarding Amount in Controversy under CAFA**

25         Based on the court's analysis, the amount in controversy on Hernandez's class claims is:

26

| **Plaintiff's Claim** | **Amount in Controversy** |
|---|---|
| Unpaid Overtime Wages | N/A |

| | |
|---|---|
| Unpaid Minimum Wages and Penalties | N/A |
| Penalties for Failure to Pay Wages Upon Termination | N/A |
| Penalties for Issuing Inaccurate Wage Statements | N/A |
| Missed Meal and Rest Break Periods | N/A |
| PAGA Penalties | $1,387,613 |
| Restitution Under the UCL | N/A |
| Attorneys' Fees | N/A |
| Amount in Controversy Subtotal | $1,387,613.[85] |

As a result, Towne Park has not adduced evidence demonstrating to a legal certainty that the amount in controversy exceeds $5 million. The court therefore concludes that CAFA provides no basis for exercising jurisdiction in this case.

### B.   Requirements for Diversity Jurisdiction

Towne Parke also invokes the court's diversity jurisdiction under 28 U.S.C. § 1332(a). That statute provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs. . . ." See also *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003) ("[J]urisdiction founded on [diversity] requires that the parties be in complete diversity and the amount in controversy exceed $75,000"). "The Ninth Circuit has held unequivocally that the removal statute is construed strictly against removal." *Ethridge v. Harbor House Rest.*, 861 F.2d 1389, 1393 (9th Cir. 1988). Thus, any doubts regarding the propriety of removal must be resolved in favor of rejecting federal jurisdiction. *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992).

---

[85]Even accepting Towne Park's 25% assumption regarding attorneys' fees, the amount in controversy does not meet the jurisdictional threshold. Towne Park's evidence is sufficient to show only that approximately $1.3 million is at issue. Twenty-five percent of that figure is $346,903.13. When this number is added to the figures above, the amount in controversy is about $1.6 million.

The complaint alleges that the total amount in controversy for each class member is less than $75,000.[86]  Thus, to show that the court has diversity jurisdiction under § 1332, Towne Park must demonstrate to a legal certainty that more than $75,000 is at issue on Hernandez's individual claims.  Towne Park makes no effort to defend its calculation of the amount in controversy on Hernandez's individual claims; it argues only that it has shown that the amount in controversy on the class claims exceeds $5 million.[87]

The notice of removal asserts that the following amounts are in controversy on Hernandez's individual claims:

| **Plaintiff's Claim** | **Amount in Controversy** |
|---|---|
| Unpaid Overtime Wages | $8,639.70 |
| Unpaid Minimum Wages and Penalties | $30,540.00 |
| Penalties for Failure to Pay Wages Upon Termination | $2,240.72 |
| Penalties for Issuing Inaccurate Wage Statements | $2,250.00 |
| Penalties and Unpaid Wages for Missed Meal and Rest Break Periods under PAGA | $24,297.30 |
| Restitution Under the UCL | $16,079.70 |
| Attorneys' Fees | $21,011.86 |

[86]Complaint, ¶ 1.

[87]While the complaint clearly pleads an amount in controversy of less than $5 million on the class claims, it is less clear respecting Hernandez's individual claims.  The jurisdictional allegations state that "the amount in controversy for each class representative, including claims for monetary damages, restitution, and a pro rata share of attorneys' fees, is less than seventy-five thousand dollars . . ." (Complaint, ¶ 1.)  The prayer for relief states that "damages, restitution penalties [sic], injunctive relief, and attorneys' fees [is] . . . less than five million dollars," but is silent on Hernandez's individual claims.  (Id. at 20.)  While this ambiguity raises some question as to Towne Park's burden of proof on the individual claims, the court need not reach the issue, as neither the notice of removal nor the evidence adduced by Towne Park satisfies either the preponderance of evidence or legal certainty standard.

| Amount in Controversy Subtotal | **$105,059.28**[88] |
|---|---|

These figures are facially deficient for several reasons.  As it did with respect to its CAFA calculations, Towne Park counted separately both the amounts recoverable on Hernandez's Labor Code claims and the amount of restitution available under the UCL.  The amount attributable to that claim must therefore be excluded from the total. Similarly, Towne Park's estimate of the size of a potential attorneys' fee award relies on unwarranted assumptions and insufficient evidence; more fundamentally, Towne Park adduces no evidence that a fee award of more than $20,000 would be reasonable in the context of Hernandez's individual claims.  Consequently, that amount too must be excluded.  Towne Park's calculation regarding the PAGA claim includes that portion of the award that would go to the LWDA in addition to the 25% award that would go to Hernandez individually.  Deducting those amounts alone results in an individual amount in controversy clearly below the jurisdictional threshold.  As these subtractions are sufficient to defeat jurisdiction, and as Towne Park expended no effort defending its number in its opposition, the court need not address the numerous other deficiencies in its showing.

Accordingly, the court concludes that Towne Park has failed to demonstrate that the amount in controversy on Hernandez's individuals claims exceeds the jurisdictional threshold.[89]

### III.  CONCLUSION

For the reasons stated, the court concludes that it lacks jurisdiction to hear this action.  The court directs the clerk to remand the case to Los Angeles Superior Court forthwith.

DATED: June 22, 2012

_Margaret M. Morrow_
MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

---

[88]Removal, ¶ 6.

[89]Given the court's conclusion, it declines to address the parties' arguments as to whether Kuhns was fraudulently joined to destroy complete diversity.